**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KAREN A. COSS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | No. 1:15-cv-6654 |
| v. | ) | |
| | ) | Hon. Jorge L. Alonso |
| BRIGGS HEALTHCARE d/b/a | ) | |
| D-M-S HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Karen A. Coss ("Coss"), by and through her attorney, Robert D. Sweeney,

submits the following memorandum of law in opposition to Defendant, Briggs Healthcare

("Briggs"), motion for summary judgement.

## INTRODUCTION

The Defendant's motion for summary judgment should be denied. Briggs claims to be

entitled to judgment, arguing that Coss has not made out a *prima facie* case of employment

discrimination on the basis of her gender. Briggs also claims that it is entitled to judgment on

Coss' sexual harassment claim. However, Coss disputes this contention as the facts establish she

has met each element for purposes of summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate if there is no genuine issue of material fact,

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view all evidence and all factual

inferences reasonably drawn from the evidence in the light most favorable to the nonmoving

party. *Tolentino v. Friedman*, 46 F.3d 645, 649 (7th Cir. 1995). Because employment cases

depend highly on "issues of intent and the credibility of witnesses, [the court] must apply these

standards with 'added rigor.'" *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1283 (7th

Cir. 1996). Summary judgment must be denied where the evidence shows a genuine issue of

material fact, so as to allow a reasonable jury to return a verdict for the non-moving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

## ARGUMENT

**I.    SUMMARY JUDGMENT MUST BE DENIED BECAUSE COSS HAS MADE OUT A PRIMA FACIE CASE OF EMPLOYMENT DISCRIMINATION**

Coss' first count of the complaint is for sex discrimination in violation of Title VII,

U.S.C. § 2000e-2. A plaintiff may prove employment discrimination indirectly through the

burden shifting framework established by the Supreme Court of the United States in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973), which first requires a plaintiff make out a *prima*

*facie* case. To make out a *prima facie* case under the *McDonnell Douglas* test, a plaintiff must

establish (1) that she was a member of a protected class; (2) was meeting her employer's

legitimate performance expectations; (3) suffered an adverse employment action; and (4) the

employer treated similarly situated persons not in the protected class more favorably. *Bragg v.*

*Navistar Int'l Transp. Corp.*, 164 F.3d 373, 376 (7th Cir. 1998).

"The method suggested in *McDonnell Douglas* . . . was never intended to be rigid,

mechanized, or ritualistic." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978).

Acknowledging the many contexts in which employment discrimination can occur, the Seventh

Circuit specifically tailors the prima facie case. *Krachnavy v. Limagrain Genetics Corp.*, 294

F.3d 871, 875 (7th Cir. 2002) (quoting *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687,

2

693 (7th Cir. 2000)). Accordingly, the fourth prong "may vary from case to case to take differing circumstances into account." *Collier v. Budd Co.*, 66 F.3d 886, 890 (7th Cir. 1995).

1. **Coss was meeting Briggs' legitimate business expectations, and Mueller's assessment of her performance should not be accepted.**

In determining whether a plaintiff has satisfied the second prong of the *McDonnell Douglas* test, the court must assess both whether the employer's expectations were legitimate, and if so, whether the employee was meeting those expectations. *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 463 (7th Cir. 1986). The focus of this inquiry is whether the employer communicated the expectations to the employee and whether those expectations were unreasonable. *Id.* The court must determine whether expectations were both communicated and whether they were unreasonable to protect from employers imposing impossible standards to create a pretext for termination. *Id.* at 463 n.3 (finding employers expectations reasonable when communicated significantly prior to termination and supported by multiple memorandums of performance criticism).

Here, Coss satisfies the second prong because she was meeting the legitimate business expectations of Briggs Healthcare. Coss worked to improve her communication with customers. Coss expanded sales at HD Smith by nearly 50% in September 2013. (Response to SOF 19-20). Coss sought out and developed opportunities to develop business with major retailers like Walgreens and Target. (Response to SOF 25, 27). These efforts produced tangible results, as Coss was successful in getting both retailers to launch pilot programs for Switch Sticks, a product not previously sold to either account. (Response to SOF 25). In these subjective categories of performance, Coss worked and improved her performance.

Briggs' points to Coss' failure to meet sales goals. However, this does not defeat Coss' *prima facie* case as these sales goals were not legitimate business expectations. Indeed, Tom

Young acknowledged as much, concluding in his investigation that the 2013 Briggs sales goals were "unrealistic" and that the sales team felt the "were asked to do the impossible." (Response to SOF 30). Indeed, Coss' personal sales responsibility for the Midwest was $17,000,000 in sales: an amount that no one with Briggs had ever achieved before. (Response to SOF 30). To expect such performance from a new manager in her first year with a new employer is not only unreasonable, but is precisely the sort of expectation cautioned against by the court in *Dale*. This is even further supported by the fact that the alleged failures of Coss cited by Briggs in support of its argument arose in early 2014, months after Mueller emailed Bruce Dan stating he had decided to terminate Coss. (Response to SOF 24-27, 30).

Briggs claims that despite Coss' efforts, she was still not meeting their business expectations. However, this argument is based entirely on the subjective say-so of Mueller. In some cases the employer's job expectations themselves may be tainted by discrimination. *Pantoja v. American NTN Bearing*, 495 F.3d 840, 846 (7th Cir. 2007). The legitimate expectations formulation of the *prima facie* case may not be appropriate where those evaluating the plaintiff's performance are accused of discrimination. *Thanongsinh v. Board of Education, District U-46*, 462 F.3d 762, 772 (7th Cir. 2006) (defendant cannot argue an employee was unqualified where assessment was administered in a discriminatory manner).

Mueller's evaluation of Coss' work performance is not worthy of credence because Mueller is the individual who harassed and discriminated against Coss. Mueller's discrimination itself calls into question the credibility of Coss' performance reviews. In particular, the quantitative metrics by which Coss' performance was evaluated were later determined by Tom Young to be unrealistic. (Response to SOF 30). Additionally, Coss' performance reviews and PIP's docked her significant points for highly subjective factors. (Response to SOF 17, 30).

4

When Coss requested that Mueller substantiate his subjective assessments, he immediately sought to terminate Coss' employment. (Response to SOF 30). Drawing all reasonable inferences from these facts in the light most favorable to Coss, there are substantial factual issues related to the credibility of Mueller's evaluations.

Additionally, Mueller stated in an email to Bruce Dan on September 11, 2013 that it was his intention to terminate Coss through the PIP process, but was concerned she may pursue legal remedies. (Response to SOF 30). This email was sent in response to Coss' request that Mueller substantiate his subjective performance assessment with evidence of her deficiencies, which itself suggests that Mueller's decision was retaliatory. (Response to SOF 30). Having already decided to terminate Coss in September, and with the retaliatory connotations of Mueller's email, all of his subsequent performance assessments and PIP reviews of Coss are inherently suspect.

**2. Coss was treated less favorably than Liston and Brantman, both males.**

"The similarly situated inquiry is flexible, common sense, and factual. It asks 'essentially are there enough common features between the individuals to allow a meaningful comparison?'" *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012) (quoting *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)). In laying out the elements of the *prima facie* case, the Supreme Court intended this prong to be malleable, reflecting the "differing factual situations" inherent to discrimination cases. *McDonnell Douglas*, 411 U.S. at 802 n.13.

Coss was similarly situated to Liston and Brantman. All three held similar positions are regional directors of sales. (Response to SOF 8, 39). Coss had an extensive background in medical sales. (Response to SOF 46). Coss and Brantman in particular had similar backgrounds, having worked as colleagues previously. (Response to SOF 46). While Coss was on a PIP and

had lower year-end ratings than either Liston and Brantman, the year-end scores and PIP are suspect themselves as they were produced by the discriminating individual on the basis of questionable methodology, as discussed *supra*. Despite possessing a similar background and qualifications, and despite meeting the bona fide expectations for her position, Liston and Brantman were given promotions while Coss had material job responsibilities removed.

### 3. Briggs' excuse that Coss was not meeting legitimate expectations is mere pretext.

Under the *McDonnell Douglas* test, once the plaintiff has satisfied her prima facie case, the burden shifts to the employer to offer a justification for its action. *Gordon*, 246 F.3d at 886. Here, Briggs has claimed Coss was terminated for failing to meet its business expectations. (Defendant's Motion for Summary Judgment, p. 3-4, 7). Accordingly, to survive summary judgment, Coss must put forth sufficient evidence that the stated reason for her termination is merely pretext. *Vanasco v. Nat'l Louis Univ.*, 137 F.3d 962, 965 (7th Cir. 1998). Brigg's proffered excuse in this case is not worthy of credence.

When the employer has offered a nondiscriminatory explanation, the burden shifts to the plaintiff to demonstrate that the "justification . . . is unworthy of credence." *Gordon*, 246 F.3d at 888 (reversing summary judgment for employer as inconsistency in asserting its proffered excuse creates material issue of fact as to pretext). A plaintiff establishes pretext by showing that the employer's explanation is not supported by the facts. *Dyrek v. Garvey*, 334 F.3d 590, 598 (7th Cir. 2003). The court must determine whether the explanation of the adverse employment action offered by the employer is honest. *Dvorak v. Mostardi Platt Assocs.*, 289 F.3d 479, 487 (7th Cir. 2002) (quoting *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997)). In reaching such a determination, the court "need not abandon good reason and common sense" and is not required to simply "take an employer at its word." *Gordon*, 246 F.3d at 889.

Briggs' proffered excuse that Coss was terminated due to failure to improve is not supported by the evidence. Indeed, Briggs' narrative of Coss' termination is directly contradicted by the record evidence. Briggs claims that Coss was terminated due to poor sales performance and a lack of improvement while on a PIP. (Response to SOF 30). Briggs claims this decision was made by Brantman on March 10, 2014 due to performance issues. (Response to SOF 30). However, the decision to terminate Coss was clearly made on September 11, 2013 by Mueller and Bruce Dan. (Response to SOF 30). The email documenting Mueller's decision predates the issues Briggs cites as justification for terminating Coss, as well as her transfer to management by Brantman. (Response to SOF 30).

Brigg's supports its narrative almost exclusively through the affidavits of Mueller and Young. However, "self-serving statements in affidavits *without factual support in the record* carry no weight on summary judgment." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) (emphasis in original). The Mueller and Young affidavits are entirely self-serving, and are not supported by the record. Accordingly, these portions of the affidavits should be given no consideration by the court.

The email not only contradicts Briggs' narrative of Coss' termination, but also contains statements that would permit a reasonable juror to find that Briggs' excuse is pretextual. A plaintiff raises an issue of fact with regards to pretext when she shows "evidence that would permit a trier of fact to find [the] reason pretextual." *Germano v. Int'l Profit Ass'n, Inc.*, 544 F.3d 798, 807 (7th Cir. 2008). Evidence satisfying the fourth prong of the *McDonnell Douglass* test may also support a finding of pretext. *Germano*, 544 F.3d at 807; See also *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (stating that disbelief of excuse in addition to prima facie case evidence sufficient to show intentional discrimination). To survive summary judgment, a

7

plaintiff must only show enough evidence to call the employers excuse into question. *Courtney v. Biosound, Inc.*, 42 F.3d 414, 423-24 (7th Cir. 1994) (holding that even non-compelling evidence is sufficient to defeat summary judgment); See also *Weisbrot v. Med. Coll. Of Wisconsin*, 79 F.3d 677, 681-82 (7th Cir. 1996) (finding issue of fact for the jury when plaintiff cast doubt on proffered excuse).

Mueller's email directly follows Coss' request for documentation of her alleged deficiencies. (Response to SOF 30). That Mueller decided to terminate Coss just one day after she requested he substantiate his subjective performance assessments raises the specter of retaliation. Mueller additionally wrote that "we will be terminating Karen Coss per the PIP process," and that he feared Coss might pursue litigation. (Response to SOF 30). A reasonable juror could draw the inference from those statements that the PIP process in the ensuing months was nothing more than Briggs' manufacturing an excuse for termination.

In addition to the record evidence contradicting its narrative, Briggs' excuse for Coss' termination is not worthy of credence because its assessment of Coss' performance is itself inherently suspect. As discussed *supra*, Mueller is the alleged discriminator in this case, but also the individual responsible for evaluating Coss' performance. (Response to SOF 13-20, 23). Briggs' decision to terminate Coss was done pursuant to Mueller's reporting and suggestion, and was made by Mueller himself. (Response to SOF 30). The September 11, 2013 email calls into question the validity of subsequent PIPs and performance evaluations. A jury could reasonably find from these facts that Briggs proffered excuse is not honest, and at a minimum create a material dispute of fact regarding pretext.

The totality of the evidence in this case is precisely the sort envisioned by the court in *Germano* that would permit a trier of fact to find the proffered excuse pretextual. Mueller's

8

negative assessments were based on subjective criteria. (Response to SOF 13, 17). Coss

nevertheless worked at and improved the disputed factors. (Response to SOF 19-20, 25, 27) Coss

was successful in growing accounts within reason. (Response to SOF 19-20, 25, 27). The

ultimate sales goals for Coss were unrealistic, a factor acknowledged by Young in the

conclusions he reached at the end of his investigation. (Response to SOF 30). Indeed, the sales

goals assigned to Coss are precisely the sort envisioned in *Dale* as those an employer may use to

manufacture pretext to justify a termination. Looking at all these facts, a jury could reasonably

determine that Briggs' excuse is merely pretextual.

## II. SUMMARY JUDGMENT SHOULD BE DENIED AS TO COSS' CLAIM FOR SEXUAL HARASSMENT AS SHE HAS MET ALL ELEMENTS OF THE CLAIM AND DEFENDANT'S DEFENSES FAIL

"A sexually hostile work environment is a form of sex discrimination under Title VII."

*E.E.O.C. v. Mgmt. Hospitality of Racine, Inc.*, 666 F.3d 422 432 (7th Cir. 2012). Actionable

sexual harassment requires a plaintiff show conduct that "is so severe and pervasive" as to alter

the conditions of her employment, creating an abusive environment. *E.E.O.C. v. Mgmt.*

*Hospitality of Racine, Inc.*, 666 F.3d 422, 432 (7th Cir. 2012). A *prima facie* case of sexual

harassment requires a plaintiff show that (1) she was subjected to unwelcome sexual harassment;

(2) the harassment was based on sex; (3) the harassment unreasonably interfered with her work

performance; and (4) there is a basis for employer liability. *Robinson v. Sappington*, 351 F.3d

317, 328-329 (7th Cir. 2003). The third prong requires a subjective and objective inquiry of

whether a reasonable person would find the work environment hostile. *Id.* at 329.

### a) Coss was subjected to unwelcome sexual harassment.

Briggs does not dispute that Coss was subjected to unwelcome sexual harassment in their

motion for summary judgment. (Defendant's Motion for Summary Judgment, p. 8-9). Indeed,

9

Coss has presented sufficient evidence in the record that she was subjected to unwelcome sexual harassment. (Response to SOF 6, 29, 35, 48). In addition to Mueller's sexist evaluation of Coss work performance, Mueller consistently degraded women in statements made to Coss. (Response to SOF 6, 29, 35, 48).

**b) Mueller's treatment of Coss was more severe than his treatment of males at Briggs.**

A plaintiff can sustain a claim for sexual harassment where the plaintiff endured conduct that was more severe and prevalent than that endured by persons outside the protected class. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940-41 (7th Cir. 2007) (finding second prong satisfied where defendant made constant references to and about female employees, even though defendant had made some similar comments to male coworkers).

Coss was subject to constant harassment by Mueller of a sexist nature. Mueller continuous criticism regarding administrative tasks far exceeded the bounds of mere management activities. (Response to SOF 51). This harassment was particularly prevalent in email communications. (Response to SOF 51). While males may have been occasionally subject to bullying or intimidation, the harassment of females was constant and prevalent. (Response to SOF 35, 55). This disparity is corroborated by the accounts of Pam Wallace and Erica Karp. (Response to SOF 52). There is ample evidence in the record that would permit a jury to conclude that the harassment suffered by Coss was more prevalent than that experienced by males.

**c) Mueller's harassment of Coss was subjectively and objectively offensive.**

A plaintiff alleging sexual harassment must show that the conduct was both objectively and subjectively offensive. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004). The third prong may be satisfied even where "alleged comments were sexist rather than sexual."

*Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007). Comments need not be of a sexual nature as long as they create different terms and conditions of employment. *Berry v. CTA*, 618 F.3d 688 (7th Cir. 2010). Sexual harassment can exist when a man treats a woman in a way he would not treat a man. *Frazier v. Delco Elecs. Co.*, 263 F.3d 663 (7th Cir. 2001).

Mueller made many sexist comments to Coss, frequently exceeding the bounds of appropriate conversation regarding women. With regards to a female member of the sales team, Mueller told Coss he would not put her in front of customers unless she lost weight. (Response to SOF 48). Mueller stated to Coss that one woman was a dumb blond, and that he only kept her at Briggs due to her physical appearance. (Response to SOF 48). Mueller told Coss that another woman had a hideous appearance and he would fire her if he could. (Response to SOF 48). Mueller made sexist comments to Coss about Oerter on many occasions. (Response to SOF 48). These comments include Mueller's asking that Coss take Oerter shopping, and criticized her for appearing like a monkey in meetings. (Response to SOF 48). While occasional vulgar banter is not actionable as harassment, Mueller's statements go beyond casual innuendo. Mueller continuously and repeatedly made statements to Coss that degraded women and treated a woman's physical appearance as though it were a performance metric for work. The court made clear in *Boumehdi* that sexist commentary is actionable. Mueller's statements were sexist and both objectively and subjectively offensive.

That this harassment was severe and pervasive is evidenced by the fact that Coss made multiple attempts to resign her position at Briggs. (Response to SOF 14, 22, 29).

Mueller also treated Coss differently than men at Briggs. As stated in *Frazier*, sexual harassment may manifest where women are not treated the same way the discriminator would treat men. Here, Mueller certainly treated Coss differently than men.

11

**d) Briggs is not entitled to judgment in its favor on the basis of its *Faragher/Ellerth* defense to employer liability.**

An employer is liable for actionable harassment by a supervisor with immediate, or higher, authority over the harassed employee. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). The Faragher/Ellerth affirmative defense requires an employer show that: (1) the plaintiff endured no tangible employment action; (2) there is some evidence that the employer reasonably attempted to correct and prevent sexual harassment; and (3) there is some evidence that the employee unreasonably failed to utilize the avenues presented to prevent or correct the harassment. *Savino v. C.P. Hall Co.*, 199 F.3d 925, 932 (7th Cir. 1999). The *Faragher/Ellerth* defense is not available to an employer that has taken a tangible employment action against the employee. *McPherson v. City of Waukegan*, 379 F.3d 430, 440 (7th Cir. 2004).

Here, Briggs may not pursue the *Faragher/Ellerth* defense. As held in *McPherson*, this affirmative defense is not available where the employer has taken a tangible employment action against the employee. That the employee was not subject to an adverse employment action is the first requirement of this defense. Here Coss was subject to several adverse employment actions. Coss was terminated by Briggs, and termination is an adverse action. (Response to SOF 31). Furthermore, Coss had material job duties usurped and removed during the course of the harassment. (Response to SOF 21, 27-28, 50). The removal or significant diminishing of material job duties from an employee can constitute an adverse employment action. *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). Briggs may not advance this defense because Briggs took adverse employment actions against Coss.

Furthermore, Coss made several attempts to avail herself of Briggs' procedures to remedy the harassment. Coss contacted Briggs' Human Resources department on numerous

12

occasions. (Response to SOF 51, 57). On at least one occasion, Coss specifically referred to Mueller's conduct as harassment. (SOF 51). Although Coss may not have specifically referred to Mueller's conduct as "harassment" on every occasion, her complaints were sufficient to inform Briggs of the issues she was facing. (Response to SOF 51, 57-58). Briggs' argument that Coss never complained of harassment puts form before function. Indeed, an employee need not use the phrase "sexual harassment" when making her complaint. *Gentry v. Exp. Packaging Co.*, 238 F3d 842 (7th Cir. 2001). Coss' complaints were sufficient to inform Briggs of the harassment she was experiencing.

Briggs did have a company policy aimed to prevent harassment. However, the second component of the *Faragher/Ellerth* defense requires that the employer reasonably attempt to correct harassment. As discussed *supra*, Coss complained of Mueller's harassment on several occasions prior to her termination but Briggs took no action in response. (Response to SOF 51, 57-58). Briggs does not dispute that it took no corrective actions in response to these complaints.

Coss suffered several adverse employment actions while at Briggs. Coss complained of Muellers' harassment to Briggs human resources as required by Briggs company policy. Briggs did not reasonably take corrective action in response to these complaints. On all the factors of the *Faragpher/Ellerth* defense, at a minimum there is a material dispute of facts. Accordingly, summary judgment must be denied.

## <u>CONCLUSION</u>

WHEREFORE, Plaintiff Karen Coss respectfully requests that this Court deny summary judgment and grant any further relief that the Court deems fair and just.

Respectfully submitted,

By: /s/ Robert D. Sweeney
Robert D. Sweeney, Esq.
RDS LAW, LLC
111 W. Washington Street
Suite 1160
Chicago, IL 60602
(312) 384-0500
rsweeney@rds-law.net

14